UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENISE W.,

               Plaintiff,

      v.                                              **DECISION AND ORDER**

                                                                     23-CV-1098S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

      1.      Plaintiff Denise W.[1] brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on March 18, 2021. She alleged disability beginning June 2, 2020, due to fibromyalgia, degenerative disc disease of the lumbar spine, osteoarthritis of the knees, osteoarthritis of the bilateral feet and ankles, degenerative joint disease of the hips, degenerative joint disease of the left shoulder, mild degenerative changes of the hands, diabetes, asthma, headaches, obesity, sleep apnea, allergic rhinitis/chronic sinusitis, nonalcoholic fatty liver disease, dizziness, Raynaud's phenomenon, morphea, spondylosis, irritable bowel syndrome, anxiety, depression, and post-traumatic stress

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

disorder ("PTSD"). Plaintiff's application was denied, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

3. On June 20, 2022, ALJ Raymond Rodgers commenced an online video hearing at which Plaintiff and Vocational Expert Jeroen Walstra appeared and testified. (R.[2] at 82-115.) Plaintiff was 46 years old when she applied for benefits with a high school education and worked as a receptionist and medical secretary. (R. at 49-50.)

4. The ALJ considered the case *de novo* and on July 28, 2022, issued a written decision denying Plaintiff's application for benefits. (R. at 19.) After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the pending action challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 15.) Plaintiff filed a response on May 15, 2024 (Docket No. 17), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's July 28, 2022, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

"more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. At Step Two, an impairment or combination of impairments is deemed "severe" if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c); see Miller v. Berryhill, No. 16-CV-06467 (MAT), 2017 WL 4173357, at *7 (W.D.N.Y. Sept. 20, 2017). On the other hand, an impairment or combination of impairments is "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. See SSR 85-28, 1985 WL 568556, at *3-4 (S.S.A. 1985); 20 C.F.R. § 404.1522; Donahue v. Colvin, No. 6:17-CV-06838 (MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018).

4

11. Further, while one may differ on the assessment of a claimant's "paragraph B" criteria, this Court must affirm the ALJ's findings that undergird the severity finding where they are supported by substantial evidence. See Biestek v. Berryhill, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019); Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012).

12. At this Step, the claimant bears the burden of establishing the severity of her impairment. But this severity requirement is *de minimis* "and is meant only to screen out the weakest of claims." Herman S. v. Comm'r, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); see also Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

13. Despite this *de minimis* screening standard at Step Two, a claimant's mental impairments also are evaluated under a special technique applying the "paragraph B" criteria to determine whether they were medically determinable mental impairments and establish the degree of functional limitation resulting therefrom in four broad functional areas such as the claimant's understanding, remembering, or applying information; interaction with others; concentration, persistence, or maintenance of pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3); see Melendez v. Comm'r, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020).

14. Analysis of the severity of mental impairments at Step Two "and in formulating the RFC are 'analytically distinct.'" Coulter v. Comm'r, 673 F. Supp. 3d 365, 376 (S.D.N.Y. 2023) (quoting David Q. v. Comm'r, No. 20-CV-1207, 2022 WL 806628, at *5 (W.D.N.Y. Mar. 17, 2022)). The Step Two assessment does not relieve the ALJ of the obligation "to discuss Plaintiff's mental health impairments in formulating the RFC." Garcia v. Comm'r, No. 21-CV-1230, 2022 WL 4234555, at *14 (S.D.N.Y. Sept. 14, 2022);

Coulter, 673 F. Supp. 3d at 376.  "An ALJ may properly determine that mild limitations found during the Paragraph B analysis do not translate into functional limitations within the RFC.  But an ALJ must provide a basis for understating how they made that determination."  Coulter, 673 F. Supp. 3d at 376.

15.    Although the claimant has the burden of proof at the first four steps, including finding at Step Four that she could perform her past relevant work, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, 482 U.S. at 146 n.5.  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

16.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 2, 2020, onset date. (R. at 18.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  fibromyalgia, degenerative disc disease of the lumbar spine, osteoarthritis of the knees, osteoarthritis of the bilateral feet and ankles, degenerative joint disease of the hips, degenerative joint disease of the left shoulder, mild degenerative changes of the hands, diabetes, asthma, headaches, and obesity.  (R. at 18.)  As for her claimed anxiety, depression, and PTSD, the ALJ found that singly or in combination they did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work and thus were nonsevere.  (R. at 21.)  At Step Three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that meets or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 25.)

17.    Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with limitations.  The ALJ found that Plaintiff could lift or carry 10 pounds occasionally and 5 pounds frequently, sit for 6 hours in an 8-hour workday, and stand and/or walk for 2 hours in a workday.  The ALJ next observed that Plaintiff could not operate foot controls or climb ladders, ropes, or scaffold but could occasionally climb ramps and stairs.  The ALJ further noted that Plaintiff could occasionally balance, stoop, kneel, and crouch, but not crawl.  The ALJ found that Plaintiff could frequently reach forward, lateral, and overhead, and could frequently handle and finger.  The ALJ noted that Plaintiff could work in environments of moderate noise but not be exposed to extreme bright lights like stage lights, headlights, or bright inspection lights.  The ALJ determined that Plaintiff should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases, and have no exposure to hazardous machinery or unprotected heights. (R. at 30.)  The ALJ, however, did not expressly make any mental health limitation findings in the RFC.

18.    Based on the Vocational Expert's opinion at Step Four, the ALJ found that Plaintiff could perform her past relevant work as a receptionist or medical secretary.  (R. at 49-50.)  Alternatively, at Step Five, the ALJ found other jobs that Plaintiff could perform that precluded disability.  The ALJ did this by posing hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, work experience and RFC and the

7

Expert opined that those jobs included document preparer, tube operator, and addresser. (R. at 50-51.)

19.  For disability applications filed after March 27, 2017, Social Security regulations require that the agency consider the persuasiveness of medical opinions while not deferring or giving any specific evidentiary weight to any medical opinion. See, e.g., 20 C.F.R. § 404.1520c(a).  The Social Security Administration considers the supportability and consistency of the opinion as the most important factors in assessing that opinion's persuasiveness.  Id. § 404.1520c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion. Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing 20 C.F.R. § 404.1520c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion would be.  20 C.F.R. § 404.1520c(c)(2).  The more relevant the objective medical evidence and supporting explanations presented by the medical source in support of their opinion, the more persuasive that medical opinion would be.  Id. § 404.1520c(c)(1).

20.  Plaintiff now argues that the ALJ failed to properly consider her mental impairments at Step Two by disregarding the opinion of primary care Nurse Practitioner Lisa Ann Feitshans from the U.S. Department of Veterans Affairs Medical Center.  (Cf. R. at 2589-96, 3288.)  Plaintiff contends that the ALJ's finding that Plaintiff had mild mental health limitations was inconsistent with her continued mental health treatment.

21.     Further, Plaintiff contends that the ALJ not accounting for her mental health impairments (be they severe or not) in the RFC constitutes harmful error because the ALJ found that Plaintiff could perform semi-skilled work while at the same time limiting her to simple work.  Claiming that the ALJ erred in finding that she could perform her past relevant work, Plaintiff contends that the denial of disability rests on the Step Five analysis, arguing that the representative jobs identified by the Vocational Expert are now obsolete or do not exist in significant numbers in the national economy.  Plaintiff concludes that the ALJ did not meet the burden at Step Five of identifying other employment Plaintiff could perform.

22.     Plaintiff solely raises consideration of her mental limitations and not of her physical limitations.  By restricting her arguments to her mental condition, Plaintiff waived challenging other aspects of her application.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); Harrington v. Comm'r, No. 18-CV-979-HBS, 2020 WL 913664, at *3 (W.D.N.Y. Feb. 26, 2020).

23.     For the reasons that follow, this Court rejects Plaintiff's arguments.  While Plaintiff met her *de minimis* burden asserting severe mental impairments, she has not established suffering more severe mental impairments than indicated by the "paragraph B" functional areas.  Further, the Court finds that the ALJ appropriately found that Plaintiff could resume her past relevant work.  Accordingly, Plaintiff failed to establish her disability.

24.     On May 4, 2020, primary care provider NP Feitshans wrote that Plaintiff could not return to work until May 11, 2020.  (R. at 1832-33; see R. at 47.)  On May 27, 2020, Plaintiff and NP Feitshans began an email exchange wherein Plaintiff sought

NP Feitshans' opinion for her disability application.  (R. at 746.)  After speaking with her counsel and mental health provider, Plaintiff asked for a supporting letter from NP Feitshans.  Plaintiff, her attorney, and mental health provider had agreed that "the stressors of [her] employment have pretty much rendered [Plaintiff] unable to work a regular job" because her physical and mental limitations presented challenges that she no longer managed.  (R. at 746.)  NP Feitshans replied on May 28, 2020, that she could write a supporting letter but would "defer all mental health issues to [Plaintiff's] mental health providers."  (Id.)  At Plaintiff's insistence, NP Feitshans then wrote that Plaintiff' had "multiple medical health problems in addition to mental health diagnosis for which she follows with mental health providers.  [Plaintiff] reports that her physical and mental health coupled with stressors of her employment rendered her unable to work a regular job."  NP Feitshans concluded that Plaintiff's "physical limitations have presented challenges that have made [it] so that she no longer is able to manage getting medical and mental conditions under control in time to go to work or manage them during work hours" and that Plaintiff would benefit from a medical retirement.  (R. at 3288.)  This correspondence, however, did not indicate that NP Feitshans confirmed Plaintiff's mental health condition with her other providers.

      25.    On November 25, 2020, Plaintiff appeared for a gastroenterology encounter and NP Feitshans noted her depression and chronic PTSD among Plaintiff's active problems.  Meanwhile, Plaintiff denied having any stress in her examination screening for depression symptoms.  (R. at 612, 613, 2544-45.)  NP Feitshans also observed that Plaintiff had a normal appearance, with organized clear thought and speech, and no disturbance of mood.  (R. at 2547.)  NP Feitshans repeated these mental health

diagnoses in subsequent appointments on August 5 and September 14, 2021. (R. at 3176, 3177-78, 3180, 3231-32, 3235.)

26. On May 17, 2022, NP Feitshans diagnosed Plaintiff with PTSD, depression, and anxiety, noted that these impairments affected her physical condition, and opined that Plaintiff was capable of low stress job with higher stress triggering anxiety, depression, PTSD, and mental health symptoms. (R. at 2589-96.) NP Feitshans also found that Plaintiff's impairments precluded all work for performance at a consistent pace without an unreasonable number and length of rest periods due to needing frequent breaks. (R. at 2594-95.) NP Feitshans further found that Plaintiff was precluded from performance of more than 20% of workday because she was unable to understand and remember detailed instructions, carry out detailed instructions, maintain regular attendance, work in coordination with others without being unduly distracted, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. at 2594.)

27. Reviewing NP Feitshans' opinion and treatment records, however, the ALJ found them unpersuasive because they were markedly inconsistent with objective evidence and NP Feitshans' own objective examination findings. (R. at 47-49.) The ALJ further found that they were inconsistent with opinion of consultative psychologist Susan Santarpia, Ph.D. (R. at 43, 48; see R. at 1284), findings of treating Veterans Affairs ("VA") psychologists Elizabeth Wahlig, Ph.D. (R. at 22, 48; see R. at 747-48), and Sarah Lafever, Ph.D. (R. 22-23; see R. at 668-70), and VA psychiatrists Vincent Croglio, D.O., and Alyssa Norman, M.D. (R. at 22, 48; see R. at 725-26, 1313-14, 3271-73), who found that

11

Plaintiff's mood was positive or euthymic and her thought processes were coherent and goal directed.  (R. at 669, 726, 748, 1285-86, 1314; see R. at 43, 48.)

28.     Considering these opinions and examination evidence, the ALJ concluded that Plaintiff's mental impairments were nonsevere.  (R. at 43.)

29.     This Court holds that the ALJ had substantial evidence for finding the persuasiveness of the opinions in record, including NP Feitshans' opinions and findings by properly relying on treating source examination findings and opinions.  Plaintiff's normal mental examination findings from her treating sources (including NP Feitshans' own examination findings) belie general practitioner NP Feitshans' opinion of more severe limitations.  (R. at 43, 48.)  NP Feitshans repeated Plaintiff's subjective complaints in her May 28, 2020, opinion and claimed deference to her mental health providers without discussion of their generally normal findings.

30.     The ALJ stated that the RFC assessment reflected "the degree of limitation . . . found in the 'paragraph B' mental function analysis."  (R. at 25.)  Although the RFC contains no express mental limitations, this assessment was based on the ALJ's analysis of persuasive state agency psychologists and Dr. Santarpia that Plaintiff's did not have severe mental impairments.  The ALJ found persuasive Dr. Santarpia's and the state agency opinions because of their consistency with treating VA sources and their normal objective examination findings therefrom.  (R. at 43, 45-46.)

31.     The ALJ extensively discussed these opinions and examination findings and noted their inconsistency with NP Feitshans' opinion.  (R. at 48-49.)  For instance, the ALJ noted Dr. Wahlig's examination of Plaintiff on May 26, 2020, when Plaintiff demonstrated normal mental health status with normal speech, linear thought process,

and positive mood.  (R. at 48; see R. at 747-48.)  On June 17, 2020, Dr. Croglio examined Plaintiff, who endorsed improved levels of anxiety and depression, with good sleep and appetite.  (R. at 725-26; see R. at 22, 48.)  On August 27, 2020, Dr. Lafever found that Plaintiff had normal mental health status despite reporting being anxious when surrounded by crowds and struggling with intimate relationships.  (R. at 668-70; see R. at 48.)  On June 2, 2021, Dr. Norman noted Plaintiff's history of chronic PTSD, depression, and anxiety, and found Plaintiff to have normal objective findings with a euthymic mood, spontaneous and fluent speech, affect reactive and expressive, reality-based thought process, and devoid of suicidal or homicidal ideations during the examination.  (R. at 1313-15, 3271-73; see R. at 22, 48.)

32.     This Court thus finds that the ALJ did not abuse his discretion in weighing the opinion evidence where substantial evidence supported the RFC assessment.  See Poupore, 566 F.3d at 307.  Here, these objective findings support the conclusion that Plaintiff had only mild mental health limitations that did not affect her RFC, contrary to the opinion and findings of NP Feitshans.  Aside from NP Feitshans' opinion and findings, no other provider opined that Plaintiff's mental health interfered with Plaintiff's performance of work activities.  Therefore, Plaintiff's Motion for Judgment on the Pleadings on this point is denied.

33.     Plaintiff next argues that the ALJ erred at Step Five by relying on the Vocational Expert's three identified jobs she could perform that are obsolete or lacked enough jobs in the national economy to preclude disability.  This Court disagrees and finds that analysis of Step Five is unnecessary because Plaintiff failed to prove disability

at Steps One through Four of the sequential analysis.  See Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003).

34. Plaintiff's arguments rest on the ALJ's severity finding of her mental impairments forming harmful error at the subsequent steps in the analysis.  This Court concludes, however, that the ALJ appropriately considered the nonsevere mental health impairments and found that Plaintiff could perform her past relevant work as a receptionist and medical secretary despite her mental impairments.  As discussed, the ALJ had substantial evidence from Plaintiff's treating sources to determine the severity and debilitating effects of her mental impairments.  Save NP Feitshans' opinions that the ALJ found unpersuasive, Plaintiff has not furnished proof that her mental conditions precluded semi-skilled work.  Therefore, the ALJ had adequate support in finding that Plaintiff could resume her former work.

35. Alternatively, at Step Five the ALJ adopted the Vocational Expert's opinion identifying other jobs Plaintiff could perform.  (R. at 49-50.)  While there may be issues with the occupations the Vocational Expert identified at Step Five,[4] this Court need not reach this step because Plaintiff had not met her burden of establishing her disability by Step Four.

---

[4] On June 22, 2024, the Social Security Administration issued an Emergency Message establishing heightened evidentiary and articulation requirements for certain Dictionary of Occupational Titles job titles "whose continued widespread existence multiple courts have questioned."  The agency now deems questionable the three occupations opined by the Vocational Expert in this case, document preparer, addresser, and tube operator, since they may be obsolete occupations or no longer exist in significant numbers (that is, at least 9,000 jobs in national economy) to preclude disability.  Soc. Sec. Admin. EM-24027 (June 22, 2024), https//secure.ssa.gov/apps10/reference.nsf/links/06212024022159PM (last visited Nov. 15, 2024); see also Melanie V. v. Comm'r, No. 23-CV-973S, 2024 WL 337924, at *5 (W.D.N.Y. July 9, 2024) (document preparer as obsolete position as listed in the Emergency Message) (Skretny, J.).  The ALJ here noted that tube operator has 2,104 jobs nationally and addresser has 2,087 jobs.  (R. at 51.)

36.	Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that the ALJ considered Plaintiff's mental impairments by properly assessing the opinion and findings of NP Feitshans and comparing them with those of treating mental health professionals at the VA and consultative psychologist. Since Plaintiff has not shown her inability to perform semi-skilled work and the ALJ found that she could perform her past relevant work, Plaintiff failed to establish her disability at Step Four of the sequential analysis.  This Court need not consider whether the ALJ properly identified other work in the national economy she could perform.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:	January 29, 2025
	Buffalo, New York

				s/William M. Skretny
				WILLIAM M. SKRETNY
				United States District Judge